UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| Riverbank Holding Company, LLC, | NO. CIV. 2:11-2681 WBS GGH |
| Plaintiff, | MEMORANDUM AND ORDER RE: |
| | MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| New Hampshire Insurance Company, and DOES 1 through 10, inclusive, | |
| Defendants. | |
| _____/ | |

----oo0oo----

Plaintiff Riverbank Holding Company, LLC ("Riverbank")
brought this action against defendant New Hampshire Insurance
Company ("NHIC") arising out of defendant's alleged breach of an
insurance policy that it issued to Riverbank.  Presently before
the court is defendant's partial motion for summary judgment
pursuant to Federal Rule of Civil Procedure 56 and plaintiff's
partial motion for summary judgment as to its breach of contract

1

claim.

I.   <u>Relevant Facts</u>

Riverbank is the owner of real property in Sacramento, California, known as Riverbank Marina ("the Marina property"). (Wengel Decl. Ex. 1 ("Policy") at 40000371 (Docket No. 13-3).) From April 16, 2003, to April 16, 2011, Riverbank held commercial liability insurance with NHIC that covered this property ("the policy"). (<u>Id.</u>; <u>id.</u> Ex. 4 ("Pearl Cross Compl.").)

The policy provides that NHIC will "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages."  (Policy at 40000464.)  Property damage is defined as "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured."  (<u>Id.</u> at 40000477-78.)

Riverbank began leasing the Marina property to Borman, Inc. ("Borman") in 2004, which operated a restaurant on the premises. (Pearl Cross Compl. ¶ 7.)  Under the lease agreement, Riverbank agreed to maintain and repair the structure of the building.  (<u>Id.</u> ¶ 9.)  In 2008, Borman sold its business to Pearl On The River ("Pearl").  (<u>Id.</u> ¶ 17.)  The sale included all of the restaurant's assets, including tenant improvements and restaurant equipment, and was contingent upon an assignment of the lease, which occurred.  (<u>Id.</u> ¶¶ 11-12.)

Upon taking possession of the Marina property, Pearl began various improvements.  (<u>Id.</u> ¶¶ 16-23.)  In the course of this work, it discovered damage to the property, including dry

2

1  rot, which Pearl repaired at its own expense.  (Id.)  When Pearl

2  demanded that Riverbank reimburse the costs associated with the

3  repairs, Riverbank refused.  (Id. ¶ 47.)

4        Conflict developed between Riverbank, Pearl, and Borman

5  arising from the damage to the Marina property, and Riverbank

6  filed suit against the two leasees in 2009 ("the underlying

7  litigation").  (Liberatore Decl. Ex. 2 ("Riverbank First Am.

8  Compl.") (Docket No. 18).)  Both defendants filed cross

9  complaints against Riverbank.[1]  (Id. Ex. 3 ("Borman Cross

10  Compl."); Pearl Cross Compl.)  In February of 2010, Borman filed

11  a cross complaint asserting a claim for breach of contract.

12  (Borman Cross Compl.)  In December of 2010, Pearl filed a cross

13  complaint alleging causes of action for negligence, breach of

14  contract, fraudulent concealment/failure to disclose, negligent

15  misrepresentation, unjust enrichment, breach of the implied

16  covenant of good faith and fair dealing, and recision.  (Pearl

17  Cross Compl.)

18        The Pearl cross complaint alleged in part that

19  Riverbank failed to disclose the "dry-rot damage to the

20  structural features of [the Marina property] . . . , water

21  intrusion, negligent design and construction resulting in damage

22  to various structural systems in the building, negligent repairs

23  that had been performed to the structure . . . , negligent

24  maintenance, care and repairs to the common areas . . . , and

25

26        [1]   NHIC has requested that the court take judicial notice
   of these court documents.  (Docket No. 20.)  As this is a motion
27  for summary judgment and not a motion to dismiss, the court need
   not take judicial notice of documents submitted along with NHIC's
28  motion in order to consider them.

1   negligent maintenance and care resulting in defective conditions

2   not obvious through a reasonable level of observation."   (Pearl

3   Cross Compl. ¶ 16.)   The Pearl cross complaint further alleged

4   that the defective conditions of the Marina property caused Pearl

5   to incur costs "in the form of structural and other repairs," and

6   that Riverbank's negligence caused damage "from water intrusion

7   and corrosion" and caused Pearl to sustain damages "including but

8   not limited to structural repairs."   (Id. ¶¶ 22, 29.)   The cross

9   complaint did not specify what these "other damages" distinct

10   from the structural damages to Riverbank's building were.

11         In addition to the costs of repairs, Pearl also alleged

12   that the structural damage to the Marina property caused Pearl to

13   delay tenant improvements and the opening of its restaurant and

14   "to suffer delay damages resulting from the duration of the

15   structural repairs."   (Id. ¶ 56.)

16         In a December 2010 letter, Riverbank tendered its

17   defense of the Pearl cross complaint to its insurance agent.

18   (Wengel Decl. ¶ 5, Ex. 3.)   A copy of the Pearl cross complaint

19   was enclosed with the letter.   (Id.)   York Risk Services Group

20   ("York"), on behalf of NHIC, responded approximately one week

21   later, acknowledging receipt and indicating that it would

22   undertake an investigation into whether coverage existed for

23   Riverbank's claim.   (Id. Ex. 4.)   NHIC further indicated that the

24   investigation was being undertaken with a reservation of its

25   rights and that it would not retain counsel to defend Riverbank

26   at that time.   (Id.)

27         There was no further communication between the parties

28   until May 2011, when Riverbank sent a letter to NHIC in which it

4

again tendered defense of the Pearl cross complaint.  (<u>Id.</u> ¶ 7, Ex. 5.)  In that letter, Riverbank also tendered defense of the Borman cross complaint.  (<u>Id.</u>)  NHIC states that it never received the May 2011 letter, but is willing to proceed for the purposes of these motions only as if it had.  (Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. at 1, n.1 (Docket No. 15).)  Riverbank never received a reply to this letter.  (Wengel Decl. Ex. 7.)

         That same month, an internal NHIC Claim Management Review discussing Riverbank's claim reported that "[b]ecause of the coverage issues, we have not investigated this claim, so we [sic] no information on whether insured is liable" and "we are not investigating this claim."  (<u>Id.</u> Ex. 6 at 1000210.)

         Riverbank made a third tender demand in June of 2011. (<u>Id.</u> Ex. 7.)  In its letter, Riverbank clarified that among the damages arising out of the harm attributable to the water intrusion and corrosion caused by Riverbank's negligence were "costs of repairing . . . tenant improvements at the site in questions [sic]."  (<u>Id.</u> at 2.)  NHIC responded to this letter the following month, and notified Riverbank that it was "still reviewing the coverage" and that it "expected a decision shortly."  (<u>Id.</u> Ex. 9.)

         The parties to the underlying litigation held an unsuccessful mediation in July, of which NHIC was informed but did not attend.  (<u>Id.</u> Ex. 8, Ex. 10 No. 24 at 9.)  In an update sent to NHIC following the mediation, Riverbank's counsel informed NHIC that the parties were continuing to mediate and that Pearl was claiming loss of use of tangible property,

1  including tenant improvements, restaurant equipment, and

2  furnishings.  (<u>Id.</u> Ex. 11 at 1.)

3          In August 2011, the parties to the underlying

4  litigation entered into a settlement agreement.  (<u>Id.</u> ¶¶ 28-29.)

5  Several days after the agreement was entered into, York on behalf

6  of NHIC notified Riverbank that it had concluded that there was

7  no coverage for the cross complaints filed against Riverbank.

8  (<u>Id.</u> Ex. 13.)  There is no evidence that NHIC did more than

9  consider the cross complaints, language of the policy, and

10 perhaps the terms of the purchase agreement and lease assignment

11 entered into by Riverbank, Pearl, and Borman in its investigation

12 of the claims made against Riverbank.  (<u>See</u> <u>id.</u> Exs. 6, 12.)

13         Riverbank filed suit against NHIC claiming breach of

14 contract on the basis of NHIC's failure to defend and failure to

15 indemnify both the Pearl and Borman cross complaints and breach

16 of the implied covenant of good faith and fair dealing.

17 (Riverbank First Am. Compl.)  The complaint included a request

18 for punitive damages.  Now, Riverbank has moved for partial

19 summary judgment as to its claim that NHIC breached its duty to

20 defend with regard to the Pearl cross complaint.  (Docket No.

21 13.)  NHIC has moved for partial summary judgment as to

22 Riverbank's claims that NHIC breached its duty to defend with

23 regard to both cross complaints and that NHIC breached the

24 implied covenant of good faith and fair dealing.  (Docket No.

25 21.)  NHIC also seeks summary judgment as to Riverbank's request

26 for punitive damages.

27 II.  <u>Evidentiary Objections</u>

28         "A party may object that the material cited to support

6

or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001)) (internal quotation marks omitted). Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial. See Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006).

Riverbank has filed six evidentiary objections. (Docket No. 26-3.)  Riverbank objects to portions of NHIC's counsel's declaration on the grounds of hearsay, lack of personal knowledge, improper argument, and improper conclusion.  It also objects to exhibit five attached to the declaration on the grounds that it is hearsay and not authenticated.

Initially, the court notes that, with respect to Riverbank's objections on the grounds of improper argument and improper conclusion, "statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and . . . will not be considered on a motion for summary judgment.  Objections on any of these grounds are simply superfluous" in the context of a motion for summary judgment.  Burch, 433 F. Supp. 2d at 1119.

Because the court does not rely on any of the evidence

1  objected to by Riverbank, its remaining objections are overruled

2  as moot.

3  III. <u>Discussion</u>

4          Summary judgment is proper "if the movant shows that

5  there is no genuine dispute as to any material fact and the

6  movant is entitled to judgment as a matter of law." Fed. R. Civ.

7  P. 56(a).[2]  A material fact is one that could affect the outcome

8  of the suit, and a genuine issue is one that could permit a

9  reasonable jury to enter a verdict in the non-moving party's

10  favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

11  (1986).

12          The party moving for summary judgment bears the initial

13  burden of establishing the absence of a genuine issue of material

14  fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

15  Alternatively, the moving party can demonstrate that the

16  non-moving party cannot produce evidence to support an essential

17  element upon which it will bear the burden of proof at trial.

18  <u>Id.</u>  Once the moving party meets its initial burden, the burden

19  shifts to the non-moving party to "designate 'specific facts

20  showing that there is a genuine issue for trial.'" <u>Id.</u> at 324

21  (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden, the

22  non-moving party must "do more than simply show that there is

23  some metaphysical doubt as to the material facts." <u>Matsushita</u>

24  <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

25  "The mere existence of a scintilla of evidence . . . will be

26  _____

27          [2]    Federal Rule of Civil Procedure 56 was revised and
    rearranged effective December 1, 2010.  However, as stated in the
    Advisory Committee Notes to the 2010 Amendments to Rule 56,

28  "[t]he standard for granting summary judgment remains unchanged."

insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. <u>Id.</u> at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." <u>Id.</u>

A.   <u>Breach of Duty to Defend</u>

Plaintiff alleges that defendant breached the policy by failing to defend it in the underlying action. "An insurer must defend any action that asserts a claim potentially seeking damages within the coverage of the policy." <u>Md. Cas. Co. v. Nationwide Ins. Co.</u>, 65 Cal. App. 4th 21, 32 (4th Dist. 1998) (quoting <u>Montrose Chem. Corp. v. Superior Court</u>, 6 Cal. 4th 287, 295 n.3 (1993)).  The duty to defend is broader than the duty to indemnify, and arises where an insurer "ascertains facts which give rise to the <u>potential</u> of liability under the policy." <u>Walters v. Marler</u>, 83 Cal. App. 3d 1, 28 (1st Dist. 1978) (citations omitted).  "[T]he duty to defend may exist even where coverage is in doubt and ultimately does not develop," <u>Kazi v. State Farm Fire & Ca. Co.</u>, 24 Cal.4th 871, 879 (2001), and "[a]ny doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor," <u>Horace Mann Ins. Co. v. Barbara B.</u>, 4 Cal. 4th 1076, 1081 (1993).

Though broad, the duty to defend is not unlimited;

9

1  rather, "it is measured by the nature and kinds of risks covered
2  by the policy." Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1,
3  19 (1995).  Where there is no possibility of coverage, there is
4  no duty to defend. Montrose, 6 Cal. 4th at 300.  It follows
5  that, "[i]n resolving the question of whether a duty to defend
6  exists . . . the insurer has a higher burden than the insured."
7  Waller, 11 Cal. 4th at 27.  "'[T]he insured need only show that
8  the underlying claim may fall within policy coverage; the insurer
9  must prove it cannot'; the insurer, in other words, must present
10  undisputed facts that eliminate any possibility of coverage."
11  Id. (citations omitted).

12       "[F]or an insurer, the existence of a duty to defend
13  turns not upon the ultimate adjudication of coverage under its
14  policy of insurance, but upon those facts known by the insurer at
15  the inception of a third party lawsuit." Montrose, 4 Cal. 4th at
16  295 (internal citations and quotation marks omitted).  In
17  determining its duty to defend, the insurer must consider facts
18  from any source--the complaint, the insured, and other sources.
19  Montrose, 6 Cal. 4th at 298-299; Gray v. Zurich Ins. Co., 65
20  Cal.2d 263, 276 (1966).  When an insurer denies defense without
21  appropriate investigation, it takes the risk that "the insured
22  may later be able to prove that a reasonable investigation would
23  have uncovered evidence to establish . . . a potential for
24  coverage.  In that case, the insurer will be liable for the costs
25  of defense already incurred by the insured and could also be
26  exposed to tort liability." Eigner v. Worthington, 57 Cal. App.
27  4th 188, 195 (4th Dist. 1997) (quoting Am. Int'l Bank v. Fid. &
28  Deposit Co., 49 Cal. App. 4th 1558, 1571 (2d Dist. 1996)).

1    The parties dispute whether three policy exclusions

2  apply to the allegations contained in the Pearl cross complaint

3  such that the duty to defend would not be triggered.[3]  Generally,

4  "interpretation of an insurance policy is a question of law."

5  Waller, 11 Cal. 4th at 18.  In interpreting a policy, the court

6  should "look first to the language of the contract in order to

7  ascertain its plain meaning . . . ."  Id.  "A policy provision is

8  ambiguous when it is capable of two or more constructions both of

9  which are reasonable."  Id. (quotations omitted).  "Any ambiguous

10 terms are resolved in the insureds' favor, consistent with the

11 insureds' reasonable expectations."  Kazi, 24 Cal. 4th at 879.

12         1.   Occurrence

13    The first exclusion disputed by the parties is the

14 exclusion providing that coverage is only available for property

15 damage caused by an "occurrence," which the policy defines as "an

16 accident, including continuous or repeated exposure to

17 substantially the same general harmful conditions."  (Policy at

18 4000477.)

19    The Pearl cross complaint alleged in part that Pearl

20 was damaged when plaintiff's negligence caused defective

21 conditions on the property, which caused Pearl to "incur costs in

22 the form of structural and other repairs."  The cross complaint

23 clarified that "[a]s a direct and proximate result of

24 [plaintiff's] negligence, resulting damage occurred from water

25 ───────────────

26      [3]    Defendant argues that there was no possibility of
   coverage raised by the Borman cross complaint.  Plaintiff does
   not dispute this.  (Pl.'s Opp'n at 27:24-26.)  Defendant also
27 argues that there is no potential for coverage under the policy's
   personal injury provision, an argument that plaintiff does not
28 appear to dispute.

1  intrusion and corrosion," and caused Pearl to sustain damages

2  "including but not limited to structural repairs to the

3  Premises."   (Pearl Cross Complaint ¶¶ 28, 29.)

4         The language quoted above suggests that Pearl's damages

5  were caused by continuous exposure to harmful wet conditions that

6  posed a threat to the restaurant Pearl purchased from Borman.

7  This meets the definition of an occurrence under the policy and

8  is sufficient to raise the possibility of coverage and trigger

9  the duty to defend.   That Pearl also sought to collect damages

10 from plaintiff on the basis of its fraudulent concealment of the

11 condition of the premises, which the court would be hard-pressed

12 to find constitutes an "occurrence" under the policy, is not

13 determinative, see Swain v. Cal. Cas. Ins. Co., 99 Cal. App. 4th

14 1, 8 (1st Dist. 2002) ("[C]overage turns not on 'the technical

15 legal cause of action pleaded by the third party' but on the

16 'facts alleged in the underlying complaint' or otherwise known to

17 the insurer." (quoting Barnett v. Fireman's Fund Ins. Co., 90

18 Cal. App. 4th 500, 510 (4th Dist. 2001)) (emphasis omitted)), and

19 cannot negate that the cross complaint also alleges facts

20 suggesting that the damage for which Pearl sought to recover was

21 caused by an occurrence.

22            2.   Property Damage

23         The second disputed exclusion limits coverage of

24 property damage, which is defined as "physical injury to tangible

25 property" or "loss of use of tangible property that is not

26 physically injured," to property not owned, rented, or occupied

27 by plaintiff.   According to defendant, this provision forecloses

28 the possibility of coverage in two ways: first, the only property

12

1   alleged to have been damaged was property plaintiff owned, and

2   second, the cross complaint alleged no property damage, only

3   economic loss.

4          With respect to defendant's first argument, that the

5   only property allegedly damaged was owned by plaintiff, the Pearl

6   cross complaint did specifically allege it had undertaken

7   structural repairs to the building owned by plaintiff.  Both

8   parties agree that suggests damage to plaintiff's property, which

9   is not covered under the policy.

10         The cross complaint also, however, referred to and

11  sought to recover for "other repairs," and damages "including but

12  not limited to structural repairs."  (Pearl Cross Compl. ¶¶ 22,

13  29.)  While these allegations are by no means detailed, defendant

14  cannot merely dismiss them as "boilerplate" and "'throwaway'

15  legalese."  (Def.'s Reply at 6:10-11 (Docket No. 29).)  They

16  indicate that Pearl was alleging only not damage to the building,

17  but also damage to something else.  A possible and natural

18  interpretation of this language is that Pearl alleged damage to

19  its own property located at the premises caused by the same

20  harmful wet conditions.  Because the allegations of damage in

21  addition to structural damages were contained in the cross

22  complaint, they raised at least the possibility of coverage for

23  damage to property owned by Pearl and located at the restaurant.[4]

24

25         [4]     Additionally, the cross complaint also alleged that as
26  a result of defects to the Marina property, Pearl did not receive
    the full benefit of its bargain under the Assignment and Purchase
    Agreement.   While the Assignment related to the lease and
27  therefore in all likelihood to plaintiff's own property, the
    Purchase Agreement related to the restaurant, including tenant
28  improvements, that Pearl purchased from Borman.   This further

                                    13

1    Contrary to defendant's argument, this would not
2  automatically trigger a duty to defend in every third-party
3  claim.  Rather, where such language raises the possibility of
4  coverage, insurers would only need to investigate to determine if
5  there was in fact a possibility of coverage in order to be able
6  to deny a defense.  If such an investigation revealed that
7  phrases like those included here really were only boilerplate,
8  then the insurer would have no duty to defend.  <u>Waller</u>, 11 Cal.
9  4th at 27.

10    Here, defendant engaged in no investigation and has not
11  produced any facts showing that Pearl did not include references
12  to damages in addition to structural damages in an attempt to
13  recover for damage to its own property.  Without undertaking such
14  any investigation, defendant cannot rely on its assumption that
15  the phrases are meaningless additions to Pearl's cross complaint
16  without risking a breach of its defense duty.  <u>See</u> <u>Eigner</u>, 57
17  Cal. App. 4th at 195.  In fact, plaintiff has produced evidence
18  in the form of a list of equipment owned by the restaurant Pearl
19  purchased and a spreadsheet listing Pearl's claimed damages that
20  suggests that Pearl did suffer and seek to recover on damage to
21  various pieces of kitchen equipment separate from the Marina
22  property.  (Wangel Decl. Exs. 15, 16.)

23    With respect to defendant's second argument, that
24  Pearl's loss of use damages alleged only economic losses and not
25  property damage.  The parties agree that the policy does not
26  provide coverage for purely economic loss, but dispute whether

27  _____

28  suggests that Pearl sought to recover for damage done to its own
   property.

14

the loss of use damages alleged by Pearl is an economic loss or a loss of use of property sufficient to constitute property damage as defined by the policy.

Among the damages sought by Pearl are loss of use damages caused when Pearl had to delay tenant improvements and the opening of its restaurant due to the unexpected structural repairs it had to undertake.  Both parties argue that Cunningham v. Universal Underwriters, 98 Cal. App. 4th 1141 (4th Dist. 2002), and Golden Eagle Insurance Corp. v. Cen-Fed Ltd., 148 Cal. App. 4th 976 (2d Dist. 2007), support their positions.

Cunningham involved an underlying lawsuit that a car dealership filed against its landlord seeking lost profits and business expenses after the dealership was unable to take timely possession of part of the rented property due to the previous tenant's failure to vacate the premises.  Cunningham, 98 Cal. App. 4th at 1145-47.  When the landlord's insurer denied any coverage and refused to defend the landlord, the landlord filed suit, claiming in part that a potential for coverage existed under his policy's property damage provisions, which provided coverage for "damage to or loss of use of tangible property" caused by "an accident, including continuous or repeated exposure to conditions."  Id. at 1155.  The California Court of Appeal held that because the tenant never actually took possession of the premises, the loss of use claim based on the tenant's exclusion from the leased space was not a loss of use of tangible property, id. at 1155-56 (citing Kazi, 24 Cal. 4th at 879-81), and that the tenant's claim based on its inability to sell any of the vehicles purchased in anticipation of taking possession

15

1  involved economic damages and not property damage withing the

2  meaning of the policy, id. at 1156.

3         In Golden Eagle Insurance Co., in the underlying suit a

4  leasee claimed that the insured had breached a lease agreement by

5  failing to maintain a commercial building's air conditioning

6  system. Golden Eagle Ins. Co., 148 Cal. App. 4th at 982.  The

7  leasee sought damages related to the breach of lease, including

8  losses incurred when the leasee had to adjust the configuration

9  of its business because certain areas of the building were unfit

10  for use.  Id. at 982.  The insurer filed suit seeking a

11  declaratory judgment that it had no duty to indemnify the insured

12  under a policy that provided coverage for physical injury to

13  tangible property, including the loss of use of tangible property

14  that is not physically injured.  Id. at 986.

15         The appellate court held that the leasee's claims

16  "rested entirely on [the insured's] alleged breach of the lease

17  and the resulting economic damage," and that such claims for

18  "economic harm suffered by [the leasee] due to the [the

19  insured's] failure to perform its contractual obligations" did

20  not constitute claims for "property damage" under the terms of

21  the insured's policy.  Id. at 986-87 (emphasis omitted).  The

22  court noted that the coverage for property loss in a standard

23  policy is "the property itself, and does not include intangible

24  economic losses," and that the insured's claim that the failure

25  to maintain the building in the condition contracted for "is no

26  more of a 'property damage' claim than the claim of any property

27  buyer who fails to obtain tangible property in the condition

28  promised or warranted."  Id. at 987.

16

1          Both Golden Eagle Insurance Co. and Cunningham are

2    distinguishable from the facts involved here.  Unlike in

3    Cunningham, Pearl alleges that it actually took possession of the

4    property itself and additionally owned tangible property located

5    on the property in the form of tenant improvements that it was

6    prevented from using as a result of plaintiff's actions.  While

7    facts in Golden Eagle Insurance Co. are more similar to the facts

8    here, the court still finds that they are distinguishable.  In

9    Golden Eagle Insurance Co., the insured was held liable only on

10   breach of contract claims, while here plaintiff faced both breach

11   of contract claims and tort claims alleging delay damages.

12   Additionally, the tenant in Golden Eagle Insurance Co. did not

13   claim that the insured's breach of the lease prevented the tenant

14   from using any property separate from the leased premises, which

15   the Pearl cross complaint alleges here.

16          The Pearl cross complaint suggests that Pearl was

17   prevented from using its own property, both tenant improvements

18   and its leasehold interest in the Marina property, due to

19   structural defects attributable to plaintiff's negligence.  While

20   the loss of use of the leasehold interest may not be tangible

21   property covered by the policy, see Golden Eagle Ins. Co., 148

22   Cal. App. 4th at 987, the loss of use of the tenant improvements

23   is.  These allegations at least suggested the possibility of

24   coverage for loss of use property damages under the policy.

25          3.   Intended or Expected Loss

26          In its motion for partial summary judgment, but not in

27   opposition to plaintiff's motion for partial summary judgment,

28   defendant relies on a third exclusion to show that there was no

17

1   potential for coverage.  This exclusion provides that insurance
2   coverage does not apply to property damage "expected or intended
3   from the standpoint of the insured."  (Policy at 40000465.)

4           The only evidence that defendant produces in support of
5   this claim are the allegations in the Borman cross complaint that
6   plaintiff sought to make assignment of Borman's lease contingent
7   upon new leasees undertaking various improvements to the
8   property.  (Borman Cross Compl. ¶ 15.)  While this suggests that
9   plaintiff knew of some damage to the Marina property, it does not
10  establish that all of the damages sought by Pearl were damages
11  expected by plaintiff.  Defendant produces no evidence that all
12  of improvements related to Pearl's claims for damages, both in
13  the form of reimbursement for the cost of repairs and profits
14  lost due to the unexpectedly long (from Pearl's perspective)
15  repair process, were improvements that plaintiff knew to be
16  necessary and therefore could have expected.  Further, as
17  discussed above, the Pearl cross complaint suggested that Pearl
18  suffered from damage to its own property beyond the structural
19  damage of which defendant suggests plaintiff was aware.

20          The cross complaint, therefore, may be read to suggest
21  that Pearl was claiming damages caused by structural deficiencies
22  greater than the problems at the Marina property of which
23  plaintiff was allegedly aware.  Therefore, it does not foreclose
24  the possibility of coverage.[5]

25

26          [5]   Defendant also disclaims a duty to defend on the ground
    that the Pearl cross complaint included, alongside its negligence
27  allegations, allegations that its damages were caused by
    plaintiff's intentional actions.  That some of Pearl's
28  allegations suggested that it was seeking to hold plaintiff

1    The parties do not dispute any material evidence,

2  rather their disagreement centers around whether Pearl's

3  allegations fall completely under any of several policy

4  exclusions such that there was no chance that plaintiff would

5  have to pay any covered damages.  This is a question of law, and

6  the court has concluded that the cross complaint contained

7  allegations that fell outside of the exclusions that defendant

8  relied upon.

9    Specifically, the allegations that Pearl suffered

10  damage to tenant improvements due to prolonged exposure to wet

11  conditions that were caused by plaintiff's negligence, suggested

12  the potential for coverage under the policy as "property damage"

13  caused by an "occurrence" for which plaintiff was liable.  This

14  was enough to trigger defendant's duty to defend.  Plaintiff met

15  its burden to demonstrate the potential for coverage, and

16  defendant has produced no evidence that would eliminate this

17  possibility.  Accordingly, the court will deny defendant's and

18  grant plaintiff's partial motions for summary judgement as to

19  plaintiff's claim for breach of contract on the basis of

20  defendant's refusal to defend plaintiff with respect to the Pearl

21  cross complaint.  Because plaintiff does not oppose it, the court

22  will grant defendant's partial motion for summary judgement as to

23  plaintiff's claim for breach of contract on the basis of

24  

25  accountable for intentional acts does not, however, excuse
    defendant from the duty to defend when there were also
26  allegations supporting a negligence theory.  Horace Mann Ins.
    Co., 4 Cal. 4th at 1081 ("Once the defense duty attaches, the
27  insurer is obligated to defend against all of the claims involved
    in the action, both covered and noncovered, until the insurer
28  produces undeniable evidence supporting an allocation of a
    specific portion of the defense costs to a noncovered claim.").

19

1  defendant's refusal to defend plaintiff with respect to the

2  Borman cross complaint.

3      B.   Breach of the Implied Covenant of Good Faith and Fair

4           Dealing

5          "Every contract imposes upon each party a duty of good

6  faith and fair dealing in its performance and its enforcement."

7  Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999)

8  (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2

9  Cal. 4th 342, 371 (1992)).  "A typical formulation of the burden

10 imposed by the implied covenant of good faith and fair dealing is

11 'that neither party will do anything which will injure the right

12 of the other to receive the benefits of the agreement.'"  Andrews

13 v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2005)

14 (quoting Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973)).

15 Under this implied obligation, an insurer "must give at least as

16 much consideration to the interests of the insured as it gives to

17 its own interests."  Wilson v. 21st Century Ins. Co., 42 Cal. 4th

18 713, 720 (2007) (quoting Frommoethelydo v. Fire Ins. Exch., 42

19 Cal.3d 208, 214 (1986)).

20         Under California law, to establish breach of the

21 implied covenant, "(1) benefits due under the policy must have

22 been withheld; and (2) the reason for withholding benefits must

23 have been unreasonable or without proper cause."  Love v. Fire

24 Ins. Exch., 221 Cal. App. 3d 1136, 1151 (4th Dist. 1990).

25 Because the court has held above that defendant did breach its

26 duty to defend against the Pearl cross complaint, the first

27 requirement is met.  The relevant factor here, therefore, is

28 whether defendant's breach was reasonable or with proper cause.

Where there is a "genuine issue" or "genuine dispute" as to the "insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute." <u>McCoy v. Progressive W. Ins. Co.</u>, 171 Cal. App. 4th 785, 793 (2d Dist. 2009). "A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds," <u>Wilson</u>, 42 Cal.4th at 723, thus summary judgment of a breach of the implied covenant of good faith and fair dealing may only be granted "when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable." <u>Amadeo v. Principal Mut. Life Ins. Co.</u>, 290 F.3d 1152, 1161–62 (9th Cir. 2002); <u>Wilson</u>, 42 Cal. 4th at 724.[6]

---

[6]   Plaintiff urges the court to hold that defendant may not rely on this genuine dispute rule as a defense on the grounds that it is inapplicable in duty to defend cases such as this one. The court acknowledges that some courts have expressed doubts regarding the application of the genuine dispute rule to cases involving the duty to defend as opposed to the duty to indemnify. <u>See, e.g.</u>, <u>Harbison v. Am. Motorists Ins. Co.</u>, 636 F. Supp. 2d 1030, 1039–41 (E.D. Cal. 2009) ("Because the existence of a genuine dispute as to the insurer's liability indicates that there is at least a potential for coverage, the existence of a genuine dispute is itself enough to trigger the insurer's duty to defend. Accordingly, the court finds that the genuine dispute doctrine appears wholly incompatible with duty to defend cases."). However, as Judge Ishii pointed out in <u>Gaylord v. Nationwide Mutual Insurance Co.</u>, 776 F. Supp. 2d 1101 (E.D. Cal. 2011), the Ninth Circuit in <u>Lunsford v. American Guaranty & Liability Insurance Co.</u>, 18 F.3d 653, 654 (9th Cir. 1994), applying California law, applied the genuine dispute doctrine to a duty to defend case. Additionally, Judge Ishii cited multiple Eastern District cases applying the genuine dispute rule to duty to defend cases as well as a "prominent California Insurance treatise" that takes the position that the rule may apply in duty to defend cases. <u>Gaylord</u>, 776 F. Supp. 2d at 1125.

The court tends to be persuaded by the reasoning in <u>Gaylord</u> that in at least some duty to defend cases, the genuine dispute rule may be appropriate. However, because the court ultimately determines that there is a triable issue of fact as to whether defendant's denial of benefits was done reasonably and in

1        The genuine dispute rule, however, cannot relieve
2   insurers from their duty to investigate all claims.  <u>Wilson</u>, 42
3   Cal. 4th at 723.  In fact, the adequacy of an insurer's
4   investigation is "[a]mong the most critical factors bearing on
5   the insurer's good faith."  <u>Shade Foods, Inc. v. Innovative</u>
6   <u>Prods. Sales & Mktg., Inc.</u>, 78 Cal. App. 4th 847, 879-80 (1st
7   Dist. 2000).  "Though some authority tends to equate a bad faith
8   failure to investigate with negligence, the better view appears
9   to be that it must rise to the level of unfair dealing."  <u>Id.</u> at
10  880.  "An unreasonable failure to investigate amounting to such
11  unfair dealing may be found when an insurer fails to consider, or
12  seek to discover, evidence relevant to the issues of liability
13  and damages."  <u>Id.</u>

14        From the evidence submitted and arguments made by the
15  parties, it appears that in determining that its duty to defend
16  was not triggered because the Pearl cross complaint raised no
17  possibility of coverage, defendant made certain assumptions about
18  the Pearl cross complaint.  Included in these assumptions was the
19  questionable assumption that none of the damages sought by Pearl
20  arose from damage to property separate from the structure of the
21  Marina property and owned by Pearl despite several references in
22  the complaint to damages other than structural damages.
23  Notwithstanding the duty to investigate claims imposed on
24  insurers under California law, defendant's internal documents
25  suggest that it failed to undertake any investigation into
26  plaintiff's claim.

27  ─────────────────────
28  good faith, the court's ruling would not change if it were to
    hold that the rule was inapplicable here.

22

1        Before defendant officially rejected plaintiff's tender
2   of defense, plaintiff tendered defense of the Pearl cross
3   complaint three times.  In connection with its third tender,
4   plaintiff explicitly notified defendant that Pearl was seeking to
5   recover for damages including repairs to tenant equipment that
6   Pearl had purchased from Borman.  (Wengel Decl. Ex. 7 at 2.)
7   Defendant produces no evidence that it looked into the substance
8   of plaintiff's representations.  Instead, nine months after
9   plaintiff's initial tender defendant denied that it had any duty
10  to defend plaintiff.  This nine-month delay is particularly
11  notable in light of the absence of evidence suggesting that
12  defendant did anything more than read the Pearl cross complaint,
13  plaintiff's policy, and perhaps the legal agreements entered into
14  by the parties to the underlying litigation in determining to
15  deny plaintiff's claim.

16       Based on these facts, a reasonable jury could conclude
17  that defendant acted in bad faith in refusing to defend
18  plaintiff.  Cf. Gaylord, 776 F. Supp. 2d at 1126 (finding no
19  evidence of bad faith where insurer made multiple attempts to
20  contact insured, eventually denied coverage on the undisputed
21  basis that insured's loss fit into a policy exclusion, and
22  engaged an outside attorney when insured agreed to reconsider its
23  denial).  Accordingly, the court will deny defendant's motion for
24  summary judgment as to plaintiff's claim for breach of the
25  implied covenant of good faith and fair dealing.

26  C.   Punitive Damages

27       "In the insurance policy setting, an insured may
28  recover damages not otherwise available in a contract action,

23

1   such as emotional distress damages resulting from the insurer's

2   bad faith conduct and punitive damages if there has been

3   oppression, fraud, or malice by the insurer." Cates Constr.,

4   Inc. v. Talbot Partners, 21 Cal. 4th 28, 43-44 (1999) (citations

5   omitted).  Under California Civil Code section 3294, a plaintiff

6   must prove "oppression, fraud, or malice" by "clear and

7   convincing evidence."  Cal. Civ. Code § 3294(a).

8          "[W]here the plaintiff's ultimate burden of proof will

9   be by clear and convincing evidence, the higher standard of proof

10  must be taken into account in ruling on a motion for summary

11  judgment." Spinks v. Equity Residential Briarwood Apartments,

12  171 Cal. App. 4th 1004, 1053 (6th Dist. 2009) (quoting Am.

13  Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton, 96 Cal.

14  App. 4th 1017, 1049 (2d Dist. 2002)). Nonetheless, "[w]hile 'the

15  "clear and convincing" evidentiary standard is a stringent one,

16  it does not impose on a plaintiff the obligation to "prove" a

17  case for punitive damages at summary judgment.'" Id. (quoting

18  Am. Airlines, 96 Cal. App. 4th at 1049).  Summary judgment "on

19  the issue of punitive damages is proper" only "when no reasonable

20  jury could find the plaintiff's evidence to be clear and

21  convincing proof of malice, fraud or oppression." Hoch v.

22  Allied-Signal, Inc., 24 Cal. App. 4th 48, 60-61 (1st Dist. 1994).

23  "In the usual case, the question of whether the defendant's

24  conduct will support an award of punitive damages is for the

25  trier of fact, 'since the degree of punishment depends on the

26  peculiar circumstances of each case.'" Spinks, 171 Cal. App. 4th

27  at 1053 (quoting Hannon Eng'g, Inc. v. Reim, 126 Cal. App. 3d

28  415, 431 (2d Dist. 1981)).

24

1    While a breach of the implied covenant of good faith

2    and fair dealing does not automatically entitle a plaintiff to

3    punitive damages, see Silberg v. Cal. Life Ins. Co., 11 Cal. 3d

4    452, 462-63 (1974), it is difficult to imagine a factual scenario

5    where evidence could support a finding of bad faith on behalf of

6    an insurance company and yet foreclose the possibility of

7    punitive damages, even where the plaintiff will have to meet the

8    "clear and convincing" burden at trial, see, e.g., R & R Sails,

9    Inc. v. Ins. Co. of Pa., 610 F. Supp. 2d 1222, 1234 (S.D. Cal.

10   2009) ("Given that material issues of fact exist as to whether

11   Defendant acted in bad faith, the Court cannot conclude as a

12   matter of law that Defendant did not act with malice, oppression,

13   or fraud in its handling of Plaintiff's claim." (citing Nasiri v.

14   Allstate Indem. Co., 41 F. App'x 76, 79 (9th Cir. 2002))); Metro.

15   Bus. Mgmt., Inc. v. Allstate Ins. Co., No. CV 05-8306 CAS, 2009

16   WL 691192, at *5 (C.D. Cal. Mar. 16, 2009) (same); Back v.

17   Allstate Ins. Co., Inc., No. S045 LKK/CMK, 2005 WL 1683885, at

18   *10 (E.D. Cal. July 13, 2005) ("Because . . . the court cannot

19   resolve the bad faith question, summary judgment as to punitive

20   damages must also be denied.").

21   Additionally, Federal Rule of Civil Procedure 56(g)

22   provides that if a court does not grant all relief requested by a

23   motion for summary judgment, "it may enter an order stating any

24   material fact—including an item of damages or other relief—that

25   is not genuinely in dispute and treating the fact as established

26   in the case."   Fed. R. Civ. P. 56(g) (emphasis added).   The

27   Advisory Committee's notes on the 2010 amendments to Rule 56

28   provide that "[e]ven if the court believes that a fact is not

25

1  genuinely in dispute it may refrain from ordering that the fact

2  be treated as established.  The court may conclude that it is

3  better to leave open for trial facts and issues that may be

4  better illuminated by the trial of related facts that must be

5  tried in any event."  <u>Id.</u> advisory committee's notes on 2010

6  amendments.  Given that the Rule formerly stated that a court

7  "shall" enter such an order (prior to 2007 amendments), and then

8  that the court "should" enter such an order (prior to 2010

9  amendments), the current language that a court "may" do so

10 indicates that courts have considerable discretion not to do so.

11        Having considered the evidence, and in particular

12 defendant's simultaneous assumptions about what Pearl was not

13 alleging and failure to conduct any investigation into whether

14 those assumptions were correct, as well as the unexplained nine-

15 month delay in officially responding to plaintiff's claim, the

16 court concludes that there is a material issue for trial as to

17 whether defendant acted with malice, oppression, or fraud.

18 Accordingly, the court must deny defendant's motion for summary

19 judgment as to plaintiff's request for punitive damages.

20        IT IS THEREFORE ORDERED that plaintiff's motion for

21 partial summary judgment of its claim for breach of contract

22 based on defendant's breach of the duty to defend against the

23 Pearl cross complaint be, and the same hereby is, GRANTED.

24        IT IS FURTHER ORDERED that defendant's motion for

25 partial summary judgment be, and the same hereby is, GRANTED as

26 to plaintiff's claim for breach of contract based on defendant's

27 duty to defend against the Borman cross complaint, and DENIED as

28 to plaintiff's claims for breach of contract based on defendant's

1  breach of the duty to defend against the Pearl cross complaint,

2  breach of the implied covenant of good faith and fair dealing,

3  and request for punitive damages.

4  DATED:   June 6, 2012

5

6  _____

7  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27